# Valerius Ebert and Jno. M. Ebert, Exc'rs of John Ebert, *vs.* Elizabeth M. Ebert and Henry Bantz, Adms. of Augustus F. Ebert.

All awards to be binding must be within and in pursuance of the terms of the submission, and must be legal, certain and final.

45      v.5

Ebert's Exc'rs *vs.* Ebert's Adm'rs.

The power and authority of the arbitrators is entirely derived from the agreement or rule of submission, and an award that embraces any thing beyond. this agreement is void as to that part of it which exceeds the authority.

An award may be bad in part and good in part : the rule is that where the matters awarded are *independent and distinct* from each other, those which are within the submission are good and not vitiated by those which are. without.

Every reasonable intendment is now made in favor of awards, and a construction given to them that will support them if possible: it will be intended that the arbitrators have not exceeded their powers, and that all matters have been decided by them, unless the contrary shall appear upon the face of the award.

Exceptions to an award cannot be founded upon any thing *dehors*: the arbitrators are not bound to state in detail the grounds upon which their judgtment is based, and the award cannot be impeached for erroneous judgment upon the facts.

By an agreement of reference all matters in controversy between the parties to a chancery suit were referred to arbitration. The object of the suit was for an account of a partnership, and payment of the deceased partner's share of the balance to his representative. HELD :

That that part of the award which determined that certain real estate was held jointly by the partners, was void as not being within the submission, but that this did not vitiate the other part of the award.

APPEAL from the equity side of the circuit court of Frederick county.

The bill in this case was filed on the 30th of November 1837, by the appellees, as administrators of Augustus F. Ebert against John Ebert, stating that a partnership had existed between the said Augustus and his father, the said John Ebert, in the skin-dressing business, since 1821, until the death of Augustus in November 1836, the profits of which were to be equally divided between them ; that the said firm purchased a house and lot in the city of Frederick, from Mrs. Rachel Steiner, in which the said Augustus resided, and which was conveyed to the firm in the name of John Ebert and son, and that said Augustus paid one-half the purchase money therefor; that at the time of the death of Augustus, there was a considerable amount of stock on hand, and were considerable debts due the firm. The bill then prays for an. account and payment to complainants of one-half of the money

after payment of debts: that the stock and effects of the part-nership may be sold, and one-half of the proceeds of the sale paid to complainants, that the surviving partner, the said John Ebert, may collect all the then outstanding debts due the firm and account for the same, and for general relief.

The answer of John Ebert filed in September 1842, denies the existence of the partnership, or that the said Augustus ever paid any part of the purchase money for the house and lot, and avers that defendant purchased the same out of his own funds, and afterwards expended between $600 and $700 in the improvement of the same. The answer further denies all the charges of the bill, and insists, that so far from owing anything to the estate of Augustus, upon a fair settlement of the business of the concern, even if his said son was treated as a partner, it would appear that he had received *more* than his share of the profits.

On the 5th of June 1848, the court passed an order in ac-cordance with the agreement of the counsel of the parties, "that all matters in dispute in this cause be referred to," three arbitrators "the award of whom or a majority of them to be returned to this court, and when confirmed by the court the said award to be a decree of this court. The costs of the reference and the suit to abide the decision of the award."

Pending this reference, John Ebert died, and his executors were made parties to the suit. On the 7th of May 1851, the arbitrators returned under their hands and seals the following award.

"All matters in dispute in this cause, having by agreement of the parties under an order of Frederick county court as a court of equity, been referred to the undersigned, who having taken upon themselves the burthen of said arbitration, and having heard the evidence submitted on the part of the com-plainants and defendants, and the statement of the solicitors of the complainants and defendants, do make and return this our final award and determination.

"We do award and determine that the estate of John Ebert deceased, is indebted to the complainants as administratrix

and administrator of Augustus F. Ebert deceased, in the sum of $4561.57, and do award that the said defendants pay to said complainants, the said sum of $4561.57.

"And we do further award and determine, that one-half of the property sold and conveyed by Rachel Steiner to John Ebert and son, was the property of Augustus F. Ebert, at the time of his decease, and that the said John Ebert was entitled to the other moiety, and that the property was jointly owned by said John Ebert and Augustus F. Ebert, as tenants in common."

To this award the defendants filed several exceptions, which are sufficiently stated in the following opinion of JUDGE MARSHALL, who was appointed special judge in the cause, delivered upon the hearing thereof.

"The award made by the referees appointed under a rule of reference in this cause, having been returned and filed, the defendants by their counsel have interposed several objections to its ratification and confirmation.

"1st. Because the award is out of the submission.

"2nd. Because the award is void for want of sufficient certainty.

"3rd. Because the award is founded in error both in law and fact.

"4th. Because the award is not final and therefore void.

"It must be admitted that all awards to bind the parties must be within and in pursuance of the submission, and must be legal, certain and final. The questions then submitted for examination and decision are, can the award be regarded as open to any of the objections which have been interposed?

"The counsel for the defendants insists, that the award is out of the submission, because the arbitrators in their award have passed upon and determined the legal title of the real estate mentioned in the proceedings, when in fact it was not embraced in the terms of the submission. The solution of this question depends upon the extent of the arbitrators authority. The power and authority of arbitrators is entirely derived from the agreement or rule of submission. *Shriver*

*vs. Devilbiss*, 9 *G. & J.*, 2. An award that embraces any thing beyond this agreement is void, as to that part of it which exceeds the authority.

"Upon an examination of the agreement in reference to this case, it appears the inquiry of the arbitrators was confined to those subjects which were properly matters in controversy between the parties complainants and defendants in this cause. If then the real estate in question is not in issue in this cause, it cannot be regarded as a matter of controversy between the parties to the submission, and that part of the award which relates to and determines its title is clearly out of the submission, and consequently void.

"To determine the question whether the real estate was embraced in the issue between the parties and properly a matter of controversy in this cause, recourse must be had to the case made by the bill. There is certainly some confusion in the case made by the bill. It is not drawn with care and precision. But it must be observed that it is a bill filed by the administrator of a deceased partner against the surviving partner, and that its general scope and design is to obtain an account and settlement of the partnership business and effects as it existed at the time of the dissolution of the firm by the death of the deceased partner; and that the prayers of the bill, specific and general, call for an account and settlement of the partnership business and effects, and nothing more. The bill does not charge that the real estate was purchased with partnership funds, for partnership purposes, or used as such. If these had been the allegations of the bill there might *possibly* have been some difficulty in determining that that part of the award which relates to the real estate was out of the submission, because the question has been mooted in the United States as well as in England, whether real estate thus purchased for a partnership is to be deemed, *for all purposes,* personal estate like other partnership effects. This question remained unsettled in Maryland until up to the decision of the case of *Goodburn and Wife vs. Stevens, et al.,* 5 *Gill,* 1. By this decision it was settled in Maryland that real estate purchased with partnership funds, to be used and applied to partnership purposes and con-

sidered and treated by the partners as a part of the partnership stock, (in the absence of any agreement between the partners impressing upon it the character of personal estate,) is to be deemed and considered, so far as the legal title is concerned, as an estate held in common, charged with a trust, each holding his purparty in trust for the partnership until the partnership account is settled, and the partnership debts paid; and then for the true and actual interest of each partner in the common stock in the balance due him after the payment of debts and the adjustment of the partnership accounts. The result of this doctrine is that real property purchased with partnership funds, and for partnership purposes, is to be regarded, upon the death of a partner, in a court of equity, as *between the partner and their creditors,* personal estate, for the payment of partnership debts, and the adjustment and winding up of the partnership concerns; but for all other purposes it is to be considered as real estate held in common by the partners, descends to the heirs at law and is subject to all the incidents of real estate. Whether a case thus made in the bill (the heirs at law not having been made parties,) would have been within the terms of the submission, it is not necessary now to determine. The case under consideration is clear of this question. The bill does not charge that the real estate was purchased with partnership funds, or for partnership purposes. On the contrary, the statement is, that it was purchased after the partnership was formed and paid for out of the private means of the partners. Real estate thus purchased and paid for is clearly the private estate of the partners, and forms no part of the partnership funds. The result is, that the real estate in question is not put in issue between the parties to this cause, and consequently must be regarded out of the submission, and the award so far as it affects the real estate pronounced void.

"It remains to consider to what extent the award is vitiated by the arbitrators exceeding their powers in determining the title of the real estate. It was held in the earlier cases upon this subject that an award that was bad in part was bad for the whole, but the rule is now well established both in England and in this country, that an award may be bad in part and

good in part, 'if the void part of the award is not of matter necessary to be decided so as to render it final, according to the terms of the submission, or be not the consideration or recompense of the thing awarded to be done on the other side.' The true rule then, is, that where the matters awarded are independent and distinct from each other, those which are within the submission are good and not vitiated by those which are without. 6 *Harr. & Johns.*, 10. 11 *Law Lib.*, 71. 10 *Gill & Johns.*, 193.

If then that part of the award which determines the title of the real estate be not independent of the rest of the award, and can be regarded as in any way blended with it, it will, as a necessary consequence, vitiate the whole award and render it void. Upon an examination of the award there does not appear to be any necessary connection between the question as to the legal title of the real estate and the rest of the award, and consequently it must stand unaffected by it. But it is insisted upon by the counsel for the defendants, that the arbitrators have exceeded their authority by taking into their consideration the rents and repairs of the real estate and mixing it up in their award.

"A more liberal and reasonable interpretation is now adopted by the courts, than formerly existed, as to awards. Every reasonable intendment will be made in their favor, and a construction given to them that will support them, if possible, without violating the rules adopted for the construction of instruments. It will be intended that the arbitrators have not *exceeded* their powers; that *all* matters have been decided by the arbitrators, unless the contrary shall appear on the face of the award; that it is certain, final and legal. 11 *Law Lib.*, 53, 61, 63. 10 *Gill & Johns.*, 193.

"Unless, therefore, it shall appear upon the face of the award that the arbitrators have exceeded their powers, it will not be intended that they have, for every intendment will be made in favor of the award, and exceptions to it cannot be founded upon anything *de hors*, 6 *Harr. & Johns.*, 10.

"It does not appear that the arbitrators took into consideration the rents or repairs of the real estate in making up their award,

and it cannot be assumed that they did. The award stands unaffected by this objection.

"The second and fourth objections are blended in the argument of the defendants" counsel, and he contends the award is void, because it is not certain and final. He assumes that the award is uncertain and not final, because it does not appear upon the face of the award, in detail, what the arbitrators have decided, or whether all matters necessary to a proper decision of the case contained in the submission have been considered. The error of the counsel consists in the assumption that various issues are presented in the bill of complaint necessary to be decided, and which it was the duty of the arbitrators under the submission to have determined distinctly and separately so as to produce an end of controversy between the parties. But the case made by the bill as it is understood, presents no such distinct issues. It is a bill filed by the representatives of a deceased partner, calling upon the surviving partner to render an account of the partnership concerns and to pay over the one-half of the balance to the representatives of the deceased partner, after all debts are paid and the partnership accounts settled. It was the duty of the surviving partner to dispose of all the stock in trade, to collect all the debts due the firm, to pay all claims against the partnership estate, and to pay over one-half of the net balance to the representatives of the deceased partner. This balance is the only interest the deceased partner had in the common stock. The whole scope and design of the case made by the bill is, to obtain an account and the judgment of the *court* for this balance. The duty of the arbitrators, therefore, under the submission, was to take an account of the partnership effects, to ascertain the true balance due the deceased partner after all the debts were paid, and to pronounce their judgment as to the amount due upon the face of their award. From this view of the case there are no issues framed by the bill, that have not been disposed of, necessary to render the award final and certain. It must be intended that the arbitrators took into their consideration every matter of account properly belonging to the partnership transaction in making up their award, and they have pronounced

their judgment as to the amount due. There does not appear then any uncertainty upon the *face* of the award, or that all matters in controversy between the parties have not been determined and settled in the award. The arbitrators were not bound to state in detail the grounds upon which their judgment is based. The power of an arbitrator is more of a judicial than of a ministerial character. It is not their duty to perform the work of an auditor by reporting facts and statement of accounts for the judgment of a court, but to examine for themselves and to pronounce the result of their judgment upon the subject matter contained in the agreement or rule of submission. *Kyd on Awards*, 345. 10 *Gill & Johns.*, 193. It follows that these two objections cannot be sustained, and the award must stand unaffected by them.

"As to the third objection that the award is founded in error both in law and in fact, it has not been seriously pressed by the counsel for the defendants, nor could it in fact be sustained if it had, because it is well settled that an award cannot be impeached for erroneous judgment upon the facts, (6 *Harr. & Johns.*, 10,) and no illegality in point of law appears upon the face of the award.

"As to the question of the costs of the reference and the suit, it was not included in the authority and power conferred upon the arbitrators. The terms of the submission settle this question; they must abide the result of the award. 11 *Law Lib.*, 46.

"The views expressed in this opinion are fully sustained by the numerous authorities referred to by the defendants' counsel, as they are understood by this court after a careful examination of them. Let the decree be drawn rejecting the award so far as it assumes to settle the title of the real estate, and confirming the award as to the residue with costs according to the terms of the submission."

From the decree passed in accordance with the above opinion the defendants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON TUCK and MASON, J.

46    v.5

*Frederick A. Schley* for the appellants, argued that the decree was erroneous:

1st. Because the award is not sufficiently *certain.* The cause is as specifically referred by the order of reference as if the matters were set out in a bond. The arbitrators were to ascertain:—1st, whether a co-partnership existed? 2nd, if they find a partnership, what was its condition when the partner died? what was the stock on hand? its amount? and whether sold or unsold? These are the questions propounded by the bill, and it was not enough for the arbitrators to say that a *certain aggregate* sum was due as the general result of their investigations; it is too vague and uncertain. Every award to be binding must be *certain,* for if uncertain, instead of putting an end to litigation, which is its object, it would be only a fresh source of dispute between the parties. 6 *Maule & Selw.,* 276, *Robinson vs. Henderson.* 32 *Eng. C. L. Rep.,* 363, *In re Rider, et al.* 41 *Do.,* 460, *Hewitt vs. Hewitt.* 9 *Mees. & Wels.,* 160, *Wild vs. Holt.* 11 *Do.,* 477, *Pearson vs. Archbold.* 11 *Wheat.,* 465, *Carnochan vs. Christie.* 20 *Eng. C. L. Rep.,* 483, *Robson vs. Railston.* 3 *Russell,* 494, *Turner vs. Turner.*

2nd. The award is void because it is not *final* between the parties. An award to be good must make a final *end* and determination of *all matters* contained in the *submission.* The award in this case does not ascertain and finally fix the *rights* of the parties, but leaves a door open for future litigation in reference to some of the very subject matters referred. As for instance, the bill alleges that debts were due to the firm at *the death* of Augustus Ebert, and that there was a stock of goods or stock in hand at the same time, the referees do not say whether these debts, when collected, or this stock in trade, when sold, shall be the property of the defendant, and not to be accounted for afterwards to the complainants, or whether the one-half of such debts and stock shall be paid over to the complainants when collected.

3rd. It is void because it is not *mutual.* The award merely says, "that the *estate* of John Ebert is *indebted* to the complainants in the sum of $4561.57, and that the defendant

shall *pay* that sum." Is he, on the payment of this sum, to be entitled to the considerable stock in trade, some finished and some unfinished, which was on hand at the death of Augustus, as *stated* in *the complainant's bill,* as also to the *whole* of the *"considerable debts,"* at that time due to the firm, as stated in the bill, and to be released from any further claim for the same? or is he still, and yet, to account for the one-half of these debts, should he hereafter collect them, or any part of them, and the stock when he shall sell the same? The award does not say; it is a one-sided award. The appellants are to pay, but it is not said from what liabilities such payment shall relieve them. There should have been a release. 59 *Law Lib.,* 126.

4th. The award is void *in part* so far as regards the *real* estate; this has been so decided by the court, and not having been appealed from by the complainants, it is now the fixed law of this case. It then being void in part, it is void *in the whole,* because the bad part is so mixed up and enters into the part that has been insisted on as good, that it cannot be separated so as to ascertain with *certainty* the sum to be paid by the appellants, even, according to the views of the referees, had they confined their action within the scope of their powers. 6 *Mees. & Wels.,* 129, *Seccombe vs. Babb.* 43 *Eng. C. L. Rep.,* 1020, *In re Marshall, et al.* 8 *Mees. & Wels.,* 628, *King vs. Bowen.* 5 *Wheat.,* 406 to 411, *Lyle vs. Rodgers.*

*Joseph M. Palmer* for the appellees, argued the following points:

1st. The exceptions to the award cannot be sustained unless it be for some defect appearing upon the face of the award, for if there be any matter *de hors* the award as corruption, misbehavior in the arbitrators, or other charges to be sustained by evidence, the objections should be supported by affidavits, which is not done in this case. *Dick vs. Milligan,* 2 *Ves.,* 24. *Cromwell vs. Owings,* 6 *H. & J.,* 10. *Rigden vs. Martin,* 6 *H. & J.,* 407. 8 *Pet.,* 177. 12 *G. & J.,* 456. *Ryan vs. Blount, et al.,* 1 *Dev. Eq. Rep.,* 385. 2 *Dev. Eq. Rep.,* 250, *Pierce vs. Perkins.*

2nd. That part of the award ratified and confirmed by the court below being entire and distinct and not at all dependent upon the other part of the award, is good and valid, and was rightfully confirmed, the principle being clearly and unquestionably settled, that an award bad in part may be good for the rest. 1 *Bac. Abr.*, 344. 1 *Wend.*, 340. 13 *Johns.*, 264. *Cox vs. Jagger*, 2 *Cowen*, 638, 652. *Willes*, 62. 12 *East.*, 166. 7 *Taunt.*, 212. *Marder vs. Cox*, 1 *Cowper*, 127. *Russell on Arbitrations*, 316. 63 *Law Lib.*, 256. 6 *H. & J.*, 10. 10 *G. & J.*, 216. 5 *Wheat.*, 394. 2 *Gallison*, 61.

3rd. That part of the award in this case ratified and confirmed by the circuit court appears upon its face to be a good and final award between the parties, hence the third exception is not well taken.

4th. It is now quite clear and well settled law, that awards are to be liberally construed so as to give a full effect and operation to the intention of the arbitrators where it can be done, and every thing is to be presumed and every reasonable intendment made in favor of them. *Archer vs. Williamson*, 2 *H. & G.*, 63. 5 *Gill*, 130. 10 *G. & J.*, 216. *Watson on Arbitrations*, 102, 111, 122. 1 *Pet.*, 222. 1 *Rand.*, 449. 5 *Greenleaf's Rep.*, 38. 5 *Wend.*, 270.

5th. The award in this case is sufficiently certain and final. Certainty to a common intent is all the law requires in such cases. *Watson on Arbitrations*, 120. 1 *Burr.*, 277. *Cargey vs. Aitcheson*, 2 *Barn. & Cres.*, 170. 2 *Bing.*, 199. 1 *Swanst.*, 43. 9 *Adol. & Ellis*, 522. 3 *Barn. & Ald.*, 237.

6th. The award is final and fully settles the disputes between the parties in relation to the co-partnership, which was referred to the referees. 1 *Bac. Abr.*, 340 to 342, and cases referred to. *McKinsey vs. Solomons*, 2 *Johns.*, 57, and 13 *Johns.*, 27. *Byers vs. Van Deusen*, 5 *Wend.*, 268. *Caton vs. McTavish*, 10 *G. & J.*, 193. *Comyn's Dig.*, 674.

MASON, J., delivered the opinion of this court.

The learned judge who decided this case in the court below has displayed his usual ability and research in the opinion which he has delivered.

A majority of this court are of opinion, that the principles announced by the judge as governing the case are correct; and they also concur in the application which he has made of them to the several questions presented in the record.

Believing the decree to be right the court affirm it, and for the reasons assigned by the learned judge in his opinion.

*Decree affirmed with costs.*