[891 NYS2d 891]

CHESKEL SHIMON, Petitioner, v HERMAN SILBERMAN, Also Known as ZVI ELIMELECH SILBERMAN, et al., Respondents.

Supreme Court, Kings County, December 21, 2009

## APPEARANCES OF COUNSEL

*Meissner, Kleinberg & Finkel, LLP,* New York City, for respondents. *J. Michael Gottesman,* New York City, for petitioner.

## OPINION OF THE COURT

MARTIN SCHNEIER, J.

The primary issue presented in this arbitration proceeding is: were the bifurcated arbitration proceedings employed by the rabbinical court which first determined liability in its "Partial Decision" and then in its final "Decision" determined the amount of the debt owed by respondents to petitioner enforceable? This is apparently an issue of first impression in this state.

In this special proceeding petitioner, Cheskel Shimon, petitions the court for an order pursuant to CPLR 7510 confirming the award of the arbitrators and pursuant to CPLR 7514, for the entry of judgment thereon in the amount of $465,000 in favor of the petitioner and against respondents.

Respondents, Herman Silberman, also known as Zvi Elimelech Silberman, and Chaim Silberman, move for an order pursuant to CPLR 3211 (a), 7507, 7509 and 7511 dismissing the petition and/or vacating the arbitration awards against respondents by the Shevet Halevi rabbinical court (rabbinical court), entitled "Partial Decision" dated February 6, 2008 and the "Decision" dated August 14, 2008.

## Background

This proceeding arises out of a loan allegedly made by petitioner to respondents in the sum of $850,000 of which $385,000 has been repaid and there remains an alleged outstanding balance owed in the sum of $465,000.

In order to recover the alleged outstanding debt, petitioner summoned respondents to the Mechon rabbinical court. Respondents objected to the Mechon rabbinical court and exercised their right under Jewish law to transfer the venue of their dispute to the Shevet Halevi rabbinical court.

The petitioner and respondents on October 24, 2004 entered into a written "Arbitration Agreement" to have their dispute arbitrated by the "Rabbinical Court Shevet Halevi."

The undisputed signed receipt by respondents acknowledging having received $850,000 from petitioner and submitted to the rabbinical court states as follows:

"By the grace of G-d,

"We the signed hereinafter attest to that we have the amount of

"$600,000.00

"$250,000.00

"$850,000.00 Eight [hundred] and fifty thousand

dollars from Mr. Cheskel Shimon.

"On this we have affixed our signatures on Friday Hazzins 5760 (Civil calender September 17, 1999).

"(Signature) Zvi Ellimelech Zilberman

"(Signature) Chaim Halevy Zilberman"

The monies were for the use of the Sanz-Klausenberg Chassidic Community to complete construction of the new building for the Sanz girls' school.

Respondent Rabbi Chaim Silberman, in his affirmation submitted in opposition to the petition and in support of the motion, in pertinent part states:

"6. The first hearing before the Rabbinical Court was scheduled to take place on October 15, 2007. All the Respondents appeared but Petitioner failed to appear . . . thereafter hearings took place with all the parties present including myself on October 22, 2007, January and February 2008. Respondents appeared before the Rabbinical Court four times before the first decision was rendered."

On February 6, 2008, the Shevet Halevi rabbinical court issued a "Partial Rabbinical Court Ruling" which in pertinent part states:

"The three of us have been convened when before us appeared the plaintiff Mr. Cheskel Shimon . . . and the brothers the defendants, Mr. Zvi Elimelech and Mr. Chaim Zilberman with regards to a financial debt between them; after hearing the arguments of the two parties, and analyzing the contract which they entered into between themselves and the rest of the materials which the two parties have submitted, we arrived at the following ruling:

"1. The brothers the defendants carry primary responsibility for this debt, and they are required to pay the plaintiff the balance of the amount which they have not yet paid him back.

"2. The exact amount will be established by the Rabbinical Court—G-d willing, after an additional hearing and a thorough analysis between them."

This partial award determined liability only and stated it would determine the exact amount of monies owed to petitioner by respondents after an additional hearing. The respondents were given both oral and written notice of a hearing after the partial ruling. Respondents telephoned the rabbinical court to

advise the rabbinical court that they would not attend any other hearing which they knew about. When respondents refused to appear the rabbinical court accepted petitioner's testimony that he had not received any additional monies since the partial award. The rabbinical court then rendered its final award based entirely on the evidence submitted to the rabbinical court prior to the partial award.

Respondent Rabbi Herman Silberman in his affirmation in his surreply submitted in opposition to the petition and in support of his motion avers in pertinent part that "[e]veryone agrees that no further hearings took place after the 'Partial Decision' was issued on February 6, 2008."

On August 14, 2008 the Shevet Halevi rabbinical court issued its final "Decision" which in pertinent part states:

"Before this tribunal appeared the plaintiff Yechezkhel Shimon . . . (First Party) and the respondents, the brothers Zvi Elimelech and Chaim Silberman . . . (Second Party).

"Regarding a financial debt, which First Party invested and gave to Second Party as an amount of $850,000 of which they returned $325,000 and they still owed $525,000. They later received another $60,000 and remained with a debt of $465,000 . . .

"After reviewing the contract, which the respondents committed to comply with by their handwriting and signatures, as well as the other material they submitted and after hearing arguments of both parties, we issue the following Decision:

"1. On Wednesday the 30th of Shvat, 5768 (corresponding to February 6, 2008) this rabbinical court issued a partial decision, which gave the respondents a chance to arrange the payoff of the debt by immediately paying $180,000 and the rest to be paid upon the decision of the Rabbinical Court.

"2. Unfortunately . . . the respondents have not at all implemented the decision . . .

"5. Therefore, this rabbinical court gives the respondents an extension of one month to pay off the debt.

"This means that until the 15th of Elvl 5768 (corresponding to September 15, 2008), they have to pay off the whole debt of $465,000.

"6. If until the above-mentioned date, they will not

pay off at least a substantial part of the debt in accordance to the Rabbinical Judges decision, this rabbinical court will give the plaintiffs—in accordance to Jewish Law—a permit to go to civil court in order for the Decision to be enforced."

On February 9, 2009, petitioner filed this petition to confirm the arbitration award and for judgment thereon.

## Discussion

CPLR article 75, "Arbitration," governs the procedure for judicial enforcement of arbitration agreements and regulates several aspects of the arbitration hearing itself.

CPLR 7501, "Effect of arbitration agreement," in pertinent part states: "A written agreement to submit any . . . existing controversy to arbitration is enforceable . . . and confers jurisdiction on the courts of the state to enforce it and to enter judgment on an award."

Respondents argue that the award dated August 14, 2008 is a modification of the partial decision dated February 6, 2008 and that the modification did not comply with CPLR 7509.

CPLR 7509 states:

"On written application of a party to the arbitrators within twenty days after delivery of the award to the applicant, the arbitrators may modify the award upon the grounds stated in subdivision (c) of section 7511. Written notice of the application shall be given to other parties to the arbitration. Written objection to modification must be served on the arbitrators and other parties to the arbitration within ten days of receipt of the notice. The arbitrators shall dispose of any application made under this section in writing, signed and acknowledged by them, within thirty days after either written objection to modification has been served on them or the time for serving said objection has expired, whichever is earlier. The parties may in writing extend the time for such disposition either before or after its expiration."

Even if the award dated August 14, 2008 did not comply with CPLR 7509, this is not a reason to invalidate the award. The purpose of CPLR 7509 is to free the courts from the burden of making formal corrections (Alexander, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 7509). In the instant case, the rabbinical court conducted the equivalent of a bifurcated trial as it first determined liability and then in its

final award determined the exact amount of debt owed by respondents to petitioner. The final rabbinical court award did not in any way modify its interim partial award. There is nothing in the text or purpose of CPLR 7509 that would forbid the procedure employed by the rabbinical court. Accordingly, the bifurcated procedure employed by the rabbinical court does not constitute a ground on which the final award may be vacated and not enforced.

Respondents also argue that the rabbinical court violated the procedures of article 75 because the award was not served on respondents in accordance with CPLR 7507. However, in order to vacate an arbitration award for failure to comply with CPLR 7507, respondents must show prejudice (*Matter of Jones v Progressive Cas. Ins. Co.*, 237 AD2d 358 [2d Dept 1997]). Here, respondents have not alleged any prejudice and no prejudice is evident on this record.

Finally, respondents argue in their memorandum of law in pertinent part that "[t]he 'Partial Decision' and the modified 'Decision' that were issued herein are each burdensome, unrealistic and wholly irrational. As a result the 'Partial Decision' and the modified 'Decision' must both be vacated in their entirety."

The court is well aware of New York's strong policy favoring arbitration and discouraging judicial interference with arbitration awards. It is well settled that judicial review of arbitration awards is extremely limited (*Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 NY3d 471 [2006]).

"An arbitration award can be vacated by a court pursuant to CPLR 7511 (b) on only three narrow grounds: if it is clearly violative of a strong public policy, if it is totally or completely irrational, or if it manifestly exceeds a specific, enumerated limitation on the arbitrator's power" (*Matter of Erin Constr. & Dev. Co., Inc. v Meltzer*, 58 AD3d 729, 729 [2d Dept 2009] [citations omitted]).

"An arbitration award must be upheld when the arbitrator offer[s] even a barely colorable justification for the outcome reached" (*Wien & Malkin LLP v Helmsley-Spear, Inc.* at 479 [internal quotation marks omitted]). The award is "irrational" only if there is no proof whatsoever to justify the award (*Matter of Peckerman v D & D Assoc.*, 165 AD2d 289, 296 [1st Dept 1991]).

Respondents have not met the stringent test required to permit vacating the award based on it being "wholly irrational."

The evidence presented to the rabbinical court was clearly sufficient to support the award.

Therefore, under the standards governing the review of arbitral awards, the Shevet Halevi rabbinical court award must be confirmed.

## Conclusion

Based on the foregoing, the petition is granted and the motion to dismiss the petition and vacate the arbitration award is denied.